OPINION
The State of Ohio (hereinafter "State") is appealing the judgment of the Montgomery County Common Pleas Court sustaining Defendant/Appellee Derek Geter's motion to suppress.
On November 22, 2000, Dayton Police Officers Douglas Hall and James Goodwill were performing surveillance at the intersection of Howell Avenue and South Mathison Street. Approximately two weeks prior Dayton police officers had executed a search warrant at a home at 32 South Mathison Street and seized drugs and weapons from that residence. By November 22, 2000, the residence appeared to be once again operating as a drug house and the police planned on serving another search warrant on the residence on November 23, 2000. Officers Goodwill and Hall were conducting surveillance on the residence on the evening of November 22, 2000 in preparation for the execution of the search warrant. The officers were checking to make sure the windows, doors, and fences were all in the same location as when the previous search warrant was executed. The officers testified that they had no intention of stopping anyone who exited the premises for fear of tipping off the proprietors of the residence of the following day's raid.
While sitting at the intersection in uniform and a marked cruiser watching the drug house, the officers observed Derek Geter exit the residence at approximately midnight. Mr. Geter looked at the officers in the marked car and began walking in the direction of the cruiser. As he approached the cruiser, Mr. Geter kept his right hand in his coat pocket and waived his left hand in the air, "like he was hailing a cab." (Tr. 9). In his left hand, Mr. Geter had a small address book which contained his identification. As Mr. Geter continued to approach the cruiser, Officer Goodwill used the PA system on his cruiser to tell Mr. Geter to remove his right hand from his pocket. Mr. Geter complied but kept his right hand clenched in a fist next to his side. As Mr. Geter continued in the direction of the police cruiser, the police officers exited their cruiser. Officer Hall, who was standing at the front of the cruiser, waited until Mr. Geter was three to four feet in front of the cruiser and then asked Mr. Geter why he had flagged them down. Mr. Geter, still clutching something in his right fist, mumbled something which Officer Hall could not understand. Officer Hall testified that at this point he was concerned for his safety and decided to pat Mr. Geter down. Officer Hall reached out and grabbed Mr. Geter's left hand, at which point Mr. Geter quickly raised his right fist to his mouth and placed whatever was in his right fist into his mouth. Believing that Mr. Geter was attempting to ingest evidence of a crime, the police officers grabbed Mr. Geter, ordering him to spit out what he placed in his mouth. Since Mr. Geter was struggling against them, the officers took him to the ground, arresting him, and repeatedly telling him to spit out what he placed in his mouth. Once on the ground, Mr. Geter spit out what he had placed in his mouth, a small rock of crack cocaine. The officers handcuffed Mr. Geter and placed him in the cruiser.
On December 14, 2000, the State charged Mr. Geter by indictment with a fifth degree felony of possession of crack cocaine, a violation of R.C.2925.11(A). Mr. Geter filed a motion to suppress the evidence against him and a hearing was held on the matter on February 2, 2001. On March 20, 2001, the trial court sustained Mr. Geter's motion to suppress. The trial court found that the officers seized Mr. Geter when they grabbed his left hand to attempt to pat him down, and that this seizure was not supported by a reasonable suspicion that Mr. Geter was engaged in wrongdoing and was armed and dangerous. Additionally, the trial court found that the officers arrested Mr. Geter when they took him to the ground and found that their suspicion that he was attempting to ingest a drug of some sort did not rise to probable cause for the arrest. Therefore, the trial court sustained the motion to suppress. The State has filed this timely appeal.
The State asserts the following sole assignment of error:
 1. THE TRIAL COURT ERRED IN SUPPRESSING THE COCAINE THAT APPELLEE SPIT ONTO THE GROUND. THE INITIAL DETENTION AND FRISK WERE SUPPORTED BY REASONABLE SUSPICION AND THE ARREST WAS JUSTIFIED BY PROBABLE CAUSE.
The State argues that the trial court erred in granting the motion to suppress because the officers had a reasonable suspicion that Mr. Geter was involved in criminal activity and that he was armed and dangerous based on the fact that he was seen exiting a known drug house, saw the officers and headed in their direction, and clenched something in his right fist which he would not reveal. We disagree.
If an officer has a reasonable basis to suspect criminal activity under the totality of the circumstances, the officer may conduct an investigative stop of an individual. State v. Andrews (1991),57 Ohio St.3d 86, certiorari denied (1991), 501 U.S. 1220. Additionally, the officer may frisk an individual for weapons if he has objectively reasonable grounds to suspect the individual is armed and dangerous.Andrews, supra. In determining whether one has reasonable grounds to suspect an individual is armed and dangerous, the issue is whether a reasonably prudent man under these circumstances would be warranted in the belief that his safety or others was in jeopardy. Id. However, when an appellate court is reviewing the actions of a police officer it must give due weight to the officer's experience and training, viewing the evidence as it would be viewed by those in law enforcement. Id. Yet, simply because a police officer has reasonable suspicion to stop an individual does not necessarily mean he has reasonable suspicion to frisk him. State v. Harris (May 18, 1994), Montgomery App. No. 14111, unreported. In order to frisk the individual, the police officer must have reasonable suspicion that the individual who he has stopped is armed and dangerous. Id.
In this case, the State argues that Mr. Geter's strange behavior coupled with his exit from a known drug house provided the police officers with reasonable suspicion to stop and frisk Mr. Geter. We disagree. As stated above, in order for the police to frisk an individual they must have reasonable suspicion that the individual is armed and dangerous. Even assuming the police officers had reasonable suspicion that Mr. Geter was engaged in criminal activity, they did not have reasonable suspicion that he was armed. Although Mr. Geter had exited a known drug house, in which the police had found weapons when they executed a search warrant two weeks prior, this is insufficient to arouse reasonable suspicion that Mr. Geter, as an individual, was armed. Mr. Geter was walking in the direction of the police officers and had waived his address book with his identification in the air towards them. Mr. Geter did have his right hand in his coat pocket, but when the police asked him to remove it from his pocket, he did so. We find this behavior, specifically Mr. Geter's gesture described by the officers as flagging them down and Mr. Geter's approach to the officers, is inconsistent with an individual having weapons on his person. Although Mr. Geter kept his right hand clenched in a fist, we do not find this is sufficient to amount to reasonable suspicion that he had a weapon concealed in his fist. The simple fact that weapons often accompany drugs even when combined with Mr. Geter's odd behavior does not amount to reasonable suspicion that he was armed. Therefore, we do not find that the trial court abused its discretion in finding that the officers did not have reasonable suspicion to frisk Mr. Geter. The State's assignment of error is without merit and overruled.
We need not address whether the officers had reasonable suspicion to stop Mr. Geter or probable cause to arrest him as the officer's lack of reasonable suspicion to frisk Mr. Geter was sufficient to sustain the motion to suppress. The judgment of the trial court is affirmed.
GRADY, J., concurs, BROGAN, J., dissenting.